# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| CHRISTUS SANTA ROSA HEALTH CARE CORPORATION, *et al.*, | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 4:24-cv-384 |
| | § | Judge Mazzant |
| UNITEDHEALTHCARE INSURANCE COMPANY, | § § | **CONS** |
| *Defendant.* | § § § | |
| | § | |
| CHRISTUS SANTA ROSA HEALTH CARE CORPORATION, *et al.*, | § § § | |
| *Plaintiffs,* | § § | Civil Action No. 4:25-cv-448 |
| v. | § § | Judge Mazzant |
| UNITEDHEALTHCARE INSURANCE COMPANY, | § § | **LEAD** |
| *Defendant.* | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant UnitedHealthcare Insurance Company's Motion to Compel Discovery (Dkt. #24). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This is a dispute between several health care service providers and an insurance company. From 2022 to 2024, Plaintiffs (or "Health Care Providers") provided emergency health care services to individuals insured by Defendant (Dkt. #27 at ¶ 15; Dkt. #36 at ¶ 15). Plaintiffs were legally obligated to, and in this case did, provide vital services to hundreds of patients irrespective

of an individual patient's ability to pay or the patient's insurance company's network status (Dkt. #27 at p. 4). 42 U.S.C. § 1395dd; 25 Tex. Admin. Code § 133.44(c)(1). In exchange for their work as "out-of-network" providers, Plaintiffs were entitled to receive the "usual and customary rate" or an otherwise "agreed rate" from insurers like Defendant. Tex. Ins. Code §§ 1271.155, 1301.0053, 1301.155. Because Plaintiffs did not participate in Defendant's provider network, there was no "agreed rate" with which the parties could regulate their statutory obligations. This lack of understanding became a significant issue when the parties ultimately disagreed as to what rate Plaintiffs were owed for hundreds of disputed claims (Dkt. #24 at pp. 2–3).

On April 1, 2024, Plaintiffs sought to resolve their issue with Defendant in court and filed their Original Petition (Civil Action No. 4:24-cv-00384-ALM, or "Christus I") in the 471st District Court of Collin County, Texas.[1] Plaintiffs alleged that Defendant paid them well below the usual and customary rate for out-of-network emergency health care services and pleaded two causes of action: violations of the Texas Insurance Code and breach of contract in the alternative (Dkt. #24 at p. 3; Dkt. #27 at ¶¶ 25–34). Defendant removed this case to federal court pursuant to this Court's diversity of citizenship jurisdiction, arguing that Plaintiffs were already paid the required usual and customary rate for the services they provided.

On March 27, 2025, Plaintiffs filed a second suit alleging the same causes of action related to additional medical claims (Dkt. #24 at p. 4). Both suits ultimately consolidated on July 23, 2025 (Dkt. #14). As discovery progressed, Defendant sought information related to Plaintiffs' costs of care, but Plaintiffs objected to Defendant's Requests for Production Nos. 16, 17, 29, 30, and 38–40

---

[1]  As required by statute, Plaintiffs filed suit within forty-five days of the issuance of the mediators' reports (*See* Dkt. #27 at ¶ 24; Dkt. #24 at p. 2). Tex. Ins. Code § 1467.0575.

(Dkt. #24-2 at p. 13; Dkt. #24-3 at pp. 10–11) on multiple grounds, including irrelevancy and disproportionality (Dkt. 24-4 at pp. 19–21, 24–26). Plaintiffs further unilaterally redacted portions of produced discovery on the basis of relevance (*See* Dkt. #24 at p. 14). Following an oral hearing with this Court, Defendant was granted leave to file a motion to compel (Dkt. #24 at p. 5). The Court now addresses the relevancy and necessity of the controverted discovery.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "documents containing[] information 'relevant to the claim or defense of any party'" (Dkt. #15 at p. 4). Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are discoverable. *See Exp. Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D.

3

Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." FED. R. CIV. P. 26(g), advisory committee's note to 1983 amendment.

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1), advisory committee's note to 2015 amendment. This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.*

4

"The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

## ANALYSIS

The Court must now determine whether a health care provider's out-of-pocket costs and billing methodology are appropriate matters of discovery in a case concerned with the payment of the "usual and customary rate" for certain out-of-network emergency services (*See* Dkt. #24 at p. 7). This determination accompanies the Court's initial recognition that billing information, including "the amount billed and the amount paid[,] are noticeably absent from Texas Insurance Code § 1467.0575" and its accompanying statutes. *See Altus Cmty. Healthcare, LP v. Unitedhealthcare Ins. Co.*, No. 4:24-CV-3978, 2025 WL 1004371, at *3 (S.D. Tex. Mar. 11, 2025) (analyzing a claim brought under TEX. INS. CODE § 1271.155), *report and recommendation adopted sub nom.* No. CV H-24-3978, 2025 WL 1001601 (S.D. Tex. Apr. 3, 2025). Defendant argues that discovery on billing information is necessary to determine whether Plaintiffs' "estimation of 'usual and customary' charges is reasonable," and claims that the Texas Supreme Court has already addressed this issue in multiple decisions (Dkt. #24 at pp. 7–9). Plaintiffs, on the other hand, argue that evidence underscoring the reasonableness of the "usual and customary rate" is irrelevant and simply not at issue under the statute (Dkt. #28 at p. 8). Plaintiffs stress that the issue of "reasonableness" is not in dispute and that it exists separate and distinct from any determination of the "usual and customary rate." Plaintiffs further emphasize that "[t]he cost [for medical services] could be $1 or $1,000 dollars, but all that matters [in this case] is the usual and customary rate that is paid for the service" (Dkt. #28 at p. 9). As a result, they ask the Court to set aside certain

opinions of other courts and "instead undertake its own assessment of the relevancy of cost information to the usual and customary rate" (Dkt. #28 at p. 8 (citation modified)).

At the outset of its analysis, the Court finds that Plaintiffs have offered objections specific enough to avoid a waiver of the discovery issue. Plaintiffs' objections either contain language notifying Defendant of the insufficiencies of each request or address particular concerns with Defendant's rationale behind the requested discovery (Dkt. #24-4 at pp. 19–21, 24–26). These objections are a far cry from "[b]oilerplate objections . . . that utilize 'standardized text' or 'ready-made or all-purpose language.'" *Tim Long Plumbing, Inc. v. Kinsale Ins. Co.*, No. 4:20-CV-00042, 2020 WL 6559869, at *3 (E.D. Tex. Nov. 9, 2020) (quoting *Star Creek Center, LLC v. Seneca Ins. Co., Inc.*, No. 17-CV-00607, 2018 WL 1934084, at *3 (E.D. Tex. Apr. 23, 2018)). As a result, the Court will address the merits of each objection.

## I.    General Relevance Analysis

Defendant served four requests regarding Plaintiffs' out-of-pocket costs for services and four requests regarding Plaintiff's billing methodology (Dkt. #24 at pp. 9, 11). Plaintiffs object to each request, arguing that they are irrelevant, disproportionate to the needs of the case, seek confidential information, and are unduly burdensome (Dkt. #28 at pp. 7, 11). Because the relevance of each individual request naturally depends upon the relevance of Plaintiffs' out-of-pocket costs at large, the Court will begin its analysis by addressing the matter of relevance generally. To that end, the Court supports its conclusion that evidence of billing costs and methodology is relevant, and thus discoverable, with an examination of both the pertinent statutory language and prior judicial interpretations related to Tex. Ins. Code §§ 1271.155, 1271.001, 1301.0053, 1301.155, and 1301.001.

Unlike an analysis of a statutory scheme similar to Medicare, which is expressly "structured around the concept of a reasonable cost," and under which the Fifth Circuit has determined that "a provider is to be reimbursed only for the reasonable cost of providing medical services to Medicare beneficiaries," the statutes at issue in this case contain no such obvious signposting. *Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 325 (5th Cir. 1984). Indeed, the well-known "difficulty of interpreting § 1271.155" is not lost on the Court, and necessitates a detailed consideration of the applicable statutory history and varying judicial constructions to illuminate the relevance of billing costs and methodology. *Emergency Health Ctr. at Willowbrook, L.L.C. v. UnitedHealthcare of Tex., Inc.*, 892 F. Supp. 2d 847, 854 (S.D. Tex. 2012).

## A.    Administrative history and statutory language support the relevance of billing information.

As a matter of initial inspection, the Court notes that the Texas Legislature has not expressly defined the phrase "usual and customary rate" in the relevant sections of the Texas Insurance Code. *See* TEX. INS. CODE §§ 1271.155, 1271.001, 1301.0053, 1301.155, 1301.001; *Molina Healthcare of Tex., Inc. v. ACS Primary Care Physicians Sw.*, No. 01-21-00727-CV, 2024 WL 3608192, at *15 (Tex. App.—Houston [1st Dist.] Aug. 1, 2024, no pet.) ("Section 1271.155(a) requires [certain parties] to reimburse out-of-network providers at the 'usual and customary rate,' but the statute provides no guidance on what constitutes such a rate."). It is up to the Court, then, to parse meaning from the cold text of the statute. This task is governed by a few supporting rules: first, in the absence of language suggesting otherwise, "[w]hen interpreting statutory language, words are given their ordinary, plain meanings, and the language must be enforced unless it is ambiguous." *United States v. Holdman*, 75 F.4th 514, 521 (5th Cir. 2023). Additionally, courts "'may consider a variety of sources, including dictionary definitions, judicial constructions of the term,

7

and other statutory definitions'" to further its interpretative endeavors. *Camacho v. Ford Motor Co.*, 993 F.3d 308, 312 (5th Cir. 2021) (quoting *Colorado Cnty. v. Staff*, 510 S.W.3d 435, 448 (Tex. 2017)).

Few interpretations of Texas Insurance Code §§ 1301 or 1271 would be complete without a reference to Texas Administrative Code § 3.3708. *Lone Star 24 HR ER Facility, LLC v. Blue Cross & Blue Shield of Tex.*, 785 F. Supp. 3d 215, 224 (W.D. Tex. 2025) ("Texas Administrative Code § 3.3708 is a regulation that guides interpretation of Texas Insurance Code §§ 1301 and 1271."). This is because the Texas Department of Insurance created § 3.3708 in response to the undefined nature of §§ 1301 and 1271, to establish a "minimum reimbursement level for out-of-network emergency care." *Id.* at 223; *see* 28 TEX. ADMIN. CODE § 3.3708. Among other requirements, that regulation, as first enacted, expressly held that insurers calculating a "usual or customary charge" must use "generally accepted industry standards and practices for determining the customary billed charge for a service and that fairly and accurately reflects market rates, including geographic differences in costs." *Lone Star*, 785 F. Supp. 3d at 223; 28 TEX. ADMIN. CODE § 3.3708(c). While this statutory language might have presumptively made billing costs and methodologies directly relevant to the central issue in this case, few things are ever quite so simple. Instead, that statutory language was short-lived. On October 12, 2020, a Texas state district court invalidated as *ultra vires* multiple clauses that provided crucial support to the pertinent language. *Texas Ass'n of Health Plans v. Texas Dept. of Ins.*, No. D-1-GN-18-003846 (419th Dist. Ct., Travis County, Tex. Oct. 15, 2020). Accordingly, the Texas Department of Insurance removed the pertinent statutory language and later explained in its Adoption Order that "[b]ecause the . . . lawsuit challenged rules providing for the *calculation of usual and customary rates based on provider billed charges*, deletion of the paragraph providing for calculations based on billed charges is consistent with the court order." TDI Adoption

Order at 68 (available at https://www.tdi.texas.gov/rules/2023/documents/20248601.pdf) (emphasis added). The Texas Department of Insurance thus "confirmed the term 'usual and customary rate' is not determined by a provider's customary billed charge for a service" and later "replaced Texas Administrative Code § 3.3708 with new requirements for payment of out-of-network emergency care claims, eliminating all references to the use of providers' billed charges to determine the applicable 'usual and customary' reimbursement rate." *Lone Star*, 785 F. Supp. 3d at 224.

The removal of statutory language that expressly provided for the use and consideration of billing costs in determining the "usual and customary rate" does not preclude this Court's finding of relevance on the same. Rather, the issue of relevance in discovery disputes is governed by the well-regarded rule that relevant discovery is "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." FED. R. CIV. P. 26; *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Even where such information is not directly related to the core issues of the claim, as is the case here, it may nevertheless remain relevant under Rule 26, as discovery is not "limited to the merits of a case . . . for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Oppenheimer*, 437 U.S. at 351. The past inclusion of express language referencing billing costs and methodology in § 3.3708 thus supports the notion that such information is at least heavily associated, or more than tangentially relevant, to the parties' claims and/or defenses, and that the information is relevant insofar as it may lead to the discovery of admissible evidence. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 263–64 (5th Cir. 2011) (highlighting the "limitations placed on the frequency and extent of discovery" but nevertheless holding that a discovery request that was "at least

reasonably calculated to lead to the discovery of some admissible evidence" was proper under the applicable rules of discovery).

Outside of Texas Administrative Code § 3.3708, the term "usual and customary rate" is defined in various chapters of the Texas Insurance Code as "the relevant allowable amount as described by the applicable master benefit plan document or policy." TEX. INS. CODE §§ 1551.003(15), 1575.002(8), 1579.002(8). Because courts "presume that the legislature employs the same meaning when it uses the same word to address the same subject matter," the Court finds this language useful in determining the potential scope of discovery. *Camacho v. Ford Motor Co.*, 993 F.3d 308, 312 (5th Cir. 2021). In this context, the definition of "usual and customary rate" is associated with various healthcare plans, including those under ERISA, which naturally consider information related to billing for medical services. *See Brushy Creek Fam. Hosp., LLC v. Blue Cross & Blue Shield of Tex.*, No. 1:22-CV-00464-RP, 2022 WL 6727278, at *5 (W.D. Tex. Oct. 11, 2022) (finding that a patient's "claims challenging the rate of reimbursement [under § 1301.155(b)] are 'inextricably linked' to the reimbursement obligation" outlined in a relevant ERISA plan), *report and recommendation adopted sub nom.* No. 1:22-CV-464-RP, 2022 WL 17732683 (W.D. Tex. Nov. 15, 2022); *see also Ramirez v. AAMCO Transmissions, Inc.*, No. EP-14-CV-340-PRM, 2014 WL 10181432, at *4–5 (W.D. Tex. Nov. 4, 2014). To the extent that the definitions of "usual and customary rate" offered in Sections 1551.003(15), 1575.002(8), 1579.002(8) influence the phrase's understanding in Sections 1271.155, 1301.0053, and 1301.155, the statute embraces consideration of billing costs and methodology.

### B.    Prior judicial interpretation of the statute supports a finding of relevance.

The Texas Supreme Court has analyzed the phrase "usual and customary" in conjunction with the relevance of out-of-pocket costs on two separate occasions: first in *In re North Cypress*

*Medical Center Operating Co., Ltd.*, 559 S.W.3d 128 (Tex. 2018), and then in *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239 (Tex. 2021). While each case may prove rhetorically useful here, they both fall short of directly controlling the issue at hand. This is because both cases tasked the Texas Supreme Court with examining the "reasonableness" of certain service charges. Indeed, unlike this case, the "reasonableness" of the cost of health care services was injected into both cases through express statutory language. *N. Cypress*, 559 S.W.3d at 132 (quoting *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 309 (Tex. 1985)) ("We have noted that the statute 'is replete with language that the hospital recover the full amount of its lien, subject only to the right to question the reasonableness of the charges comprising the lien.'"); *K & L*, 627 S.W.3d at 249 (noting that a relevant statute contained language limiting claimant's recovery under the "common-law requirement that the amount of recoverable expenses be reasonable" to justify the relevance of health care cost information). Certainly, while a question concerning the "reasonableness" of hospital charges naturally opens the door to evidence related to the billing of those charges, whether a question involving merely the "usual and customary rate" does so is less clear. At the very least, the Court notes that the two queries are not altogether interchangeable and instead constitute separate questions invoking different measures of relevance. *See, e.g.*, *MedARC, LLC v. Scott & White Health Plan*, 618 F. Supp. 3d 365, 372 (N.D. Tex. 2022) (finding that an expert was "qualified to offer his opinions on the necessity and reasonableness of the IONM services provided by Revolution, and on the usual and customary rates for those services"). The issue is whether this variance constitutes a distinction without a difference under the facts presented.

Although the Texas Supreme Court has yet to directly rule on the matter, it has helpfully alluded to its opinion concerning the relevance of billing information such as "discounted amounts

the hospital accepted from patients who had private insurance or were covered by government programs" in determining a usual and customary *charge* in the absence of any express "reasonableness" requirement:

> Not all courts agree on the relevance of such information. In *Parnell v. Madonna Rehabilitation Hospital, Inc.*, for example, the Nebraska Supreme Court upheld summary judgment for the hospital on the amount of its hospital lien. 258 Neb. 125, 602 N.W.2d 461, 464–65 (Neb. 1999). Noting that the statute at issue provided for a lien on the amount due for the hospital's "usual and customary charges," the court summarily held that consideration of the "amounts actually collected," rather than the amount charged, would contravene the statute's plain language. *Id.* at 464. Importantly, however, the statute at issue in *Parnell* did not contain a reasonableness requirement. And *while the court correctly noted the unremarkable proposition that amounts charged and amounts collected are two different things, it failed to explain why they are wholly unrelated.*

*N. Cypress*, 559 S.W.3d at 134 n.9 (emphasis added).

While the statutory "reasonableness" distinction that clearly guided the Texas Supreme Court's decisions in *North Cypress* and *K & L* from *Parnell* is nowhere to be found in this case, the Court declines to follow the rhetoric offered by the Nebraska Supreme Court and finds that discovery of information related to billing costs and methodologies is, at a minimum, relevant to the interpretation of the elusive "usual and customary" rate question. *See Parnell*, 602 N.W.2d at 464–65. While a jury's ultimate finding of a given "usual and customary rate" is certainly "not determined by a provider's customary billed charge for a service" alone, such information cannot fairly be labeled "wholly unrelated" to the query. *N. Cypress*, 559 S.W.3d at 134 n.9; *see also Lone Star*, 785 F. Supp. 3d at 224 (noting the fact that the use of providers' billed charges were once indirectly referenced as a means to determine an applicable "usual and customary" reimbursement rate). While the pertinent information might ultimately be rendered inadmissible at trial, its relevance for discovery purposes is apparent from the circumstances of the case:

> [A] jury might be able to determine a usual and customary rate without any reference to the plan by considering other unrelated evidence such as similar provider agreements, prevailing costs of performing the services, and the experience, expertise, and compensation of other doctors in a particular region performing the medical procedure in question.

*ACS Primary Care Physicians Sw., P.A. v. United Healthcare Ins. Co.*, 479 F. Supp. 3d 366, 373 n.4 (S.D. Tex. 2020).

For instance, in *Molina Healthcare of Texas, Inc. v. ACS Primary Care Physicians Southwest, PA*, two parties disagreed how to calculate the "usual and customary rate" under Section 1271.155(a). No. 01-21-00727-CV, 2024 WL 3608192, at *4 (Tex. App.—Houston [1st Dist.] Aug. 1, 2024, no pet.). At trial, Molina (an insurer entity) "did not take the charges billed by providers into consideration when setting its out-of-network reimbursement rates." Instead, "[a] Molina employee testified that the providers' billed charges were 'not really relevant' because providers can increase their prices at any time, and these prices are 'an arbitrary number' and are 'really not the market rate.' Molina argued that its reimbursement rates . . . satisfied the requirement that it pay out-of-network providers the 'usual and customary' rate." *Id.* However, the opposing party's expert was "asked to calculate . . . the difference between the amount the provider billed and the amount Molina paid the provider" and used that figure as proof of underpayment according to the proposed usual and customary rate. *Id.* Importantly, the expert was permitted to utilize such information without being asked to measure the reasonableness of the providers billed charges, or whether the "charges 'were an appropriate measure of damages under Texas law.'" *Id. Molina* thus highlights the potential relevance of billing information, including the cost of providing certain medical services, in spite of the absence of an express "reasonableness" standard enforced by statute or caselaw.

Similarly, in *Apollo MedFlight, LLC v. BlueCross BlueShield of Texas*, a district court analyzed a previous iteration of Section 1301.155 to address whether items related to "payment methodology for charges . . . . [and] third-party health service providers, including usual and customary rates, payments, and billings" were relevant to discovery and addressed by a specific protective order. *See* No. 2:18-CV-166-Z-BR, 2020 WL 520608, at *14–15 (N.D. Tex. Jan. 13, 2020). The previous version of Section 1301.155 analyzed in that case only asked insurers to pay the "preferred level of benefits" and did not include the current "usual and customary rate" language that controls the present litigation. *See id.* The party resisting discovery assumed that the billing information listed above was relevant to the "usual and customary rate" language, but argued that the evidence should not be permitted because the "usual and customary rate" phrase had not yet been added to the statute when the claim accrued. *See id.* The party seeking discovery argued that the discovery was relevant because the "usual and customary rate" language was implied in the statute's use of the phrase "preferred level of benefits." *Id.* Both phrases are present in the statute today. TEX. INS. CODE § 1301.155. The district court ultimately found that the proposed discovery was relevant, expressly noting that "the meaning of the phrase 'preferred level of benefits' in Section 1301.155 . . . is an issue to be litigated in this case." *Apollo*, 2020 WL 520608, at *14–15. In other words, the court granted discovery on billed charges and payment methodology based on specific language contained in Section 1301.155 which is still under effect in the statute. *Apollo* thus stands for the proposition that "payment methodology for charges submitted by non-participating providers" and "the source(s) of the data used to apply that payment methodology" should be discoverable in cases brought under Section 1301.155. *Id.* On top of that, *Apollo* highlights the

14

unlikelihood of such information being altogether "wholly unrelated" to the "usual and customary rate" question that the parties seek to answer under Sections 1271.155 and 1301.155.

The Court concludes its discussion of prior judicial interpretation by clarifying its intent to utilize the dicta offered by the Texas Supreme Court and fellow United State District Court in *ACS Primary Care* to hold that a factfinder may find information related to billing costs and methodology relevant in determining a given "usual and customary rate," especially if a party's billed charges disproportionately exceed its costs in providing the services typically at issue under Sections 1271.155, 1271.001, 1301.0053, 1301.155, or 1301.001. *See N. Cypress*, 559 S.W.3d at 134 n.9; *ACS Primary Care* 479 F. Supp. 3d at 373 n.4. Given the plain language of the phrase "usual and customary rate," the absence of a controlling statutory definition, and the judicial interpretations discussed above, the Court finds that discovery regarding Plaintiffs' out-of-pocket costs and billing methodology for providing emergency services is at least relevant to the case at hand.

**C.    Plaintiffs' expert has placed billing information within the scope of relevancy.**

Defendant posits that Plaintiffs' expert placed the relevance of billing methodology directly at issue by calculating damages based on median reimbursement rates for commercial claims as a percentage of billed charges (Dkt. #24 at p. 8). Defendant seeks the ability to challenge Plaintiff's expert by discovering how the individual billed charges were formulated. Plaintiffs argue that their expert made use of billed charges merely "to standardize across datasets to ensure apples-to-apples comparisons of the amounts Defendant paid for a service and the amounts other payors paid for the same services" (Dkt. #28 at p. 3). In other words, Plaintiffs argue that their expert merely compares "(a) the percentage of billed charge [Defendant] paid on the claim with (b) the percentages of billed charges other payors paid on comparable claims" and that investigation into

the reasonableness of those charges or how they are set is therefore irrelevant and outside the scope of discovery (Dkt. #28 at p. 13).

The Court finds that Plaintiffs' expert disclosure has highlighted the sufficient relevance of billed charges and billing methodology to the questions of fact pertinent to this case (*See* Christus I, Dkt. #48 p. 3 (questioning "the *reasonableness* of United's allowed amounts for the Disputed Claims" (emphasis added))). As noted above, evidence need not be admissible to be discoverable. *Oppenheimer*, 437 U.S. at 351. Thus, the Court finds that discovery on these matters is appropriate under Rule 26. FED. R. CIV. P. 26.

## II.    Specific Requests for Production

With the issue of general relevancy now resolved, the Court next addresses the crux of Defendant's Motion: the contested discovery requests. What follows is an analysis regarding the burden, proportionality, and threat to confidentiality posed by information related to billing costs and billing methodologies in this case. While the Court attends to the discovery requests related to billing costs in detail, it refuses to do the same regarding the discovery requests related to billing methodologies for reasons outlined below.

### A.    Plaintiffs' objections regarding confidentiality are insufficient to prevent Defendant's proposed discovery.

Plaintiffs include the following language in their response to Defendant's Request for Production Nos. 29, 30, 38, 39, 40: "Subject Plaintiffs object to the Request because it seeks documents that are confidential, proprietary and/or trade secret business information . . . ." (Dkt. #24-4 at pp. 19–21, 24–26). These objections are insufficient to prevent discovery, as "[c]onfidentiality does not act as a *per se* bar to disclosure or constitute grounds to withhold documents from discovery." *Hunsinger v. SKO Brenner Am., Inc.*, No. 3:13-CV-0988-D, 2014 WL

114348, at *2 (N.D. Tex. Jan. 9, 2014); *Fed. Trade Comm'n ex rel. Yost v. Educare Ctr. Services, Inc.*, No. EP-19-CV-196-KC, 2020 WL 4334119, at *7 (W.D. Tex. Apr. 15, 2020) (citing *A.H. Robins Co. v. Fadely*, 299 F.2d 557, 561 (5th Cir. 1962) ("[T]he presence of confidential business information is not a basis upon which discovery can be resisted."). A confidentiality or proprietary information claim may be a proper ground to seek a protective order, but "it generally is not a valid objection for withholding discovery altogether." *McKellips v. Kumho Tire Co., Inc.*, 305 F.R.D. 655, 661 (D. Kan. 2015). Because this case is already governed by a comprehensive protective order (the "Order"), the Court finds that Plaintiffs' confidentiality objections are ineffective to preclude Defendant's proposed discovery (Dkt. #32).

### B.    Some of Defendant's requests related to billing costs are appropriate in the context of discovery.

Defendant served four discovery requests regarding Plaintiffs' out-of-pocket costs for services: Request for Production Nos. 17, 38, 39, and 40. (Dkt. #24-1 at p. 10; Dkt. #24-2 at p. 13; Dkt. #24-3 at p. 11). As noted above, Plaintiffs produced a variety of objections to each request, arguing in part that each is irrelevant, disproportional, and poses an undue burden on the nonmoving parties. The Court addresses each request in turn.

> 1.    **REQUEST FOR PRODUCTION NO. 17:** All Documents and Communications demonstrating Your out-of-pocket cost for each supply or service for which you seek reimbursement through the Claims.

Request for Production No. 17 is facially overbroad. In defense of the scope of the request, Defendant argues that its proposed discovery request is "more narrowly tailored" than a discovery request analyzed and rejected in *In re Muller*, 612 S.W.3d 701 (Tex. App.—Amarillo 2020, no pet.) (Dkt. # 24 at p. 11). There, a plaintiff disputed the "reasonable value of those goods and services" which she had received at a defendant hospital. *Id.* at 703. The Texas appellate court found that a

request for a hospital to disclose "'[a]ll documents reflecting the Hospital's actual cost to provide the goods and services listed on the subject medical bills'" was overbroad and unnecessary even where the factfinder was explicitly tasked with determining the "reasonableness" of the charges the plaintiff was forced to pay. *Id.* at 705. Here, as discussed above, the "reasonableness" of the billed costs or billing methodology is only loosely relevant to the "usual and customary rate" determination, and thus provides even less justification for the proposed discovery than was present in *In re Muller*. *Id.* As this discovery request appears to all but perfectly replicate the inappropriate request in *In re Muller*, the Court finds that the burden it poses "outweighs its likely benefit." *See Piney Woods*, 2021 WL 7184948, at *5. Due to its distance from other discovery requests in similar cases addressing the "usual and customary rate," this Court finds that Defendant's Motion should be denied as to this request. *See id.* (discussing the contested relevance and burden associated with a discovery request seeking only "[p]laintiff's average out-of-network reimbursement rate from other payors").

2.    **REQUEST FOR PRODUCTION NO. 38:** Documents sufficient to show Plaintiffs' costs of providing care for the claims identified in response to Request No. 1.

Request for Production No. 38 is overbroad and must be limited to the claims at issue. Defendant expressly notes that the request, if it is found to be valid, should be modified and limited to matters specific to this case (Dkt. #24 at p. 9 n.7). Accordingly, the Court modifies this request to seek "documents sufficient to show Plaintiffs' costs of providing care for 'the same emergency services as the claims at issue'" (Dkt. #24 at p. 9 n.7). *See, e.g., Sanders v. MoneyGram Int'l, Inc.*, No. 3:23-CV-808-M (BK), 2024 WL 5430194, at *2 (N.D. Tex. June 27, 2024) ("[T]he Court has the discretion to modify a discovery request deemed overly broad."). Defendant's Motion as to this request is thus granted in part and denied in part.

18

3.    **REQUEST FOR PRODUCTION NO. 39:** All documents reflecting, discussing, or identifying the factors Plaintiffs consider when calculating the costs of providing care or services for health care claims, including the claims identified in response to Request No. 1.

Like Request for Production No. 38, Request for Production No. 39 is also facially overbroad due to a party error. Both parties agree that the request, if it is found to be valid, should be modified and limited to matters specific to this case (Dkt. #24 at p. 9 n.7; Dkt. #28 at p. 10). Because the Court finds that the request would be invalid even as applied exclusively to the claims at issue, it does not adopt any proposed language and instead declines to enforce the request.

Defendant's proposed discovery implicitly seeks items "such as the costs, vendors, and markups for individual products, and the hospital's budgets, financial statements, and tax returns," which were expressly rejected by *In re Muller*. *See* 612 S.W.3d at 705. The Court finds this request to be unduly burdensome and not reasonably limited in scope to fall within the safeguards imposed by the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 26. Defendant's use of "all" in this context poses a significant barrier to the relevance of Defendant's proposed discovery, as it necessarily "seeks far more granular data" than was sought in cases such as *North Cypress*. *See In re Muller*, 612 S.W.3d at 705; *see also North Cypress*, 559 S.W.3d at 128. Importantly, the Texas Supreme Court itself has clarified that "[a]lthough we conclude these types of information are relevant under *North Cypress*, we did not hold then, and we do not hold now, that *all communications* or *all documents* regarding those topics are automatically discoverable." *In re K & L*, 627 S.W.3d at 251 (emphasis added). Defendant's Motion is thus denied as to this request.

4.    **REQUEST FOR PRODUCTION NO. 40:** All documents analyzing or comparing Plaintiffs' costs of providing care to the amount of Plaintiffs' billed charges and/or amounts paid by any payor.

Like Request for Production Nos. 38 and 39, Request for Production 40 is similarly overbroad and must be limited to the claims at issue. Defendant expressly notes that the request, as presented, should be modified and limited to matters specific to this case (Dkt. #24 at p. 9 n. 7). Accordingly, the Court modifies this request to seek "all documents analyzing or comparing Plaintiffs' costs of providing care to the amount of Plaintiffs' billed charges and/or amounts paid by any payor in relation to the 'the same emergency services as the claims at issue' (Dkt. #24 at p. 9 n. 7). *See, e.g.*, *Sanders*, 2024 WL 5430194, at *2.

Despite its express use of "all," this particular discovery request "appears to be relatively straight-forward and is seeking information that the [party] likely has readily available." *Nichols v. White*, No. 6:19-CV-00111, 2020 WL 8271876, at *2 (E.D. Tex. Feb. 10, 2020). As a result, the Court finds that Defendant's Motion should be granted as to this request.

### C.    Defendant's requests related to billing costs are inappropriate in the context of discovery.

Defendant served three discovery requests concerning Plaintiffs' billing methodology.[2] Mirroring their response to the previous class of discovery requests, Plaintiffs objected to these

---

[2]    Request for Production No. 16 seeks "[a]ll Documents and Communications demonstrating how You set Your billed charges for each service and/or supply for which you seek reimbursement through the Claims" (Dkt. #24-1 at p. 13). Request for Production No. 29 seeks "[a]ll documents Plaintiffs consider, use, or otherwise rely upon to determine the amount of its billed charges" (Dkt. #24-3 at p. 10). Request for Production No. 30 seeks "[a]ll documents discussing or analyzing the reasonableness of Plaintiffs' billed charges, including, but not limited to, any analyses of billed charges compared to amounts paid to Plaintiffs by any payor (including Health Care Plans, Medicare, Medicaid, or other entities)" (Dkt. #24-3 at p. 10). The consistent use of "all" in these requests not only renders them overbroad but also unfairly threatens Plaintiffs with a burden that does not reflect the potential use of such information at trial. "The[se] requests, therefore, [are] unreasonably burdensome." *See, e.g.*, *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 42 (N.D. Tex. 1981).

three demands on the basis that they posed an undue burden to the nonmoving parties, that they were irrelevant, and that they were disproportional to the needs of the case.

While Plaintiffs approach each contested discovery request in a similar manner, the Court refuses to do the same. Rather, the Court finds that these discovery requests are far too broad and inconsistent with this Memorandum Opinion and Order to be appropriately examined and edited accordingly. The Court is particularly mindful of the notion that Defendant's Discovery Request Nos. 16, 29, and 30, as presently written, encompass documents touching on nearly all aspects of Plaintiffs' business. This is so because the determination of what to charge for emergency treatment is at least partially based on the economic circumstances of the affected providers, what it costs Plaintiffs to provide medical services, and a significant amount of market information (*See* Dkt. #32 at pp. 3–4). In consideration of the Texas Supreme Court's reluctance to grant discovery on such matters even where the issue of reasonableness was *directly at issue*, this Court finds that Defendant's proposed discovery lies beyond the scope of reasonable discovery. *See North Cypress*, 559 S.W.3d at 137 ("The amounts North Cypress accepts as payment for those services from other patients, including those covered by private insurance and government benefits, are relevant to whether the charges to Roberts were reasonable . . . ."); *see also In re Interventional Pain Assoc., P.A.*, 510 F. Supp. 3d 448, 452 (W.D. Tex. 2021) (noting that the "Texas Supreme Court [in *North Cypress*] relied on its previous interpretations of the Texas hospital-lien statute as being 'replete with language that the hospital recover the full amount of its lien*, subject only to the right to question the reasonableness of the charges comprising the lien*'" to justify the validity of discovery requests related to billing (quoting *North Cypress*, 559 S.W.3d at 131)).

This ruling does not discount a district court's inherent ability to narrow discovery requests. *See El Paso Disposal, LP v. Ecube Labs Co.*, 792 F. Supp. 3d 703, 708 (W.D. Tex. 2025) ("When a court finds that a party's requested discovery is too broad, it may narrow the requests accordingly."). Rather, it reflects this Court's determination to encourage the collaboration of parties when such collaboration would prove both practical and informative. Thus, "consistent with the limited purposes for discovery identified in this Memorandum Order," Defendant shall narrow its requests to include materials as considered relevant and warranted under the particular facts of this case and the oral hearing held on December 10, 2025.[3] *Exxon*, 91 F.R.D. at 46 (N.D. Tex. 1981). Accordingly, in the event that Defendant continues to seek billing methodology information, "[t]he parties will be expected to confer about narrowing discovery in accordance with the guidelines set forth in this [Memorandum Opinion and] Order." *Id.*

## III.  Plaintiffs' Unilateral "Relevance" Redactions are Improper

Plaintiffs produced, in relevant part, a total of six unilaterally-redacted documents in response to Defendant's numerous discovery requests.[4] Plaintiffs argue that they redacted certain information because it was irrelevant, and that such redaction is proper because it is accompanied by short contextual sentences (*See* Dkt. #28 at pp. 15–16). The Court nevertheless finds that Plaintiffs' unilateral redactions are improper. *See DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06CV72, 2007 WL 9832994, at *3 (E.D. Tex. May 15, 2007) ("HSBC has redacted information from the documents ordered produced to DataTreasury by the Court, not on the grounds of a

---

[3]  The Court here reminds the parties of the relevant consequences of the December 10, 2025 oral hearing. At that hearing, the Court permitted Plaintiffs to modify the "applicable date" of Discovery Request Nos. 29 and 39 if Plaintiffs certify that they did not utilize or rely upon material prior to the claims at issue in creating their billing methodology for those claims.

[4]  The relevant documents are labeled "CHRISTUS_003700," "CHRISTUS_003701," "CHRISTUS_003702," "CHRISTUS_003703," "CHRISTUS_003704," and "CHRISTUS_003713."

privilege, but rather on HSBC's determination that the information is not relevant. This is improper."); *see also Coleman v. United States*, No. SA-16-CA-00817-DAE, 2017 WL 1294555, at *1 (W.D. Tex. Mar. 28, 2017) ("Of course, a party cannot decide what documents he/she believes are relevant and produce only that material."); *Megatel Homes III, LLC v. Moayedi*, No. 3:20-CV-00688-L-BT, 2025 WL 1638927, at *4 (N.D. Tex. June 9, 2025) (collecting cases). While courts in this Circuit will occasionally permit unilateral redaction based solely on the perceived irrelevance of specific items of discovery, such activity is regarded as the exception rather than a typical discovery practice, and the Court finds that it is not warranted here. *Ex rel. Simms v. Austin Radiological Ass'n*, 292 F.R.D. 378, 386 (W.D. Tex. 2013) ("'redaction of otherwise discoverable documents is the exception rather than the rule . . . .'" (quoting *Beverage Distrib., Inc. v. Miller Brewing Co.*, No. 2:08-CV-1112, 2010 WL 1727640, at *4 (S.D. Ohio Apr. 28, 2010))); *Gen. Elec. Co. v. Mitsubishi Heavy Indus., Ltd.*, No. 3:10-CV-276-F, 2011 WL 13202145, at *4 (N.D. Tex. Sept. 14, 2011) (disagreeing with the unilateral redaction of produced documents as "inconsistent with discovery rules and privileges," suggesting that a party instead "produce the documents unredacted to the Court for in camera review and determination . . . [or] produce the redacted documents on a privilege log for such a review, together with a detailed statement of reasons why redaction is proper and appropriate"), *report and recommendation adopted in part*, No. 3:10-CV-276-F, 2011 WL 13201877 (N.D. Tex. Dec. 21, 2011).

To permit unilateral, unprivileged redaction in this instance would also undermine the confidence and authority demanded by protective orders. As the Court has previously noted, the parties have already entered into an Agreed Protective Order (Dkt. #32). The Order contains two tiers of confidentiality, providing adequate safeguards to protect any proprietary information, trade

secrets, or confidential information produced in discovery. Although Plaintiffs argue that their present and future contractual obligations could be damaged by the production of the redacted material, they fail to present a convincing argument in light of the ongoing and future enforcement of such a comprehensive Order. *TNA Austl. Pty Ltd. v. PPM Techs., LLC*, 2018 WL 2010277, at *15 (N.D. Tex. Apr. 30, 2018) (declining to allow redactions of responsive documents or to conduct an in-camera review where a protective order sufficiently addressed concerns regarding trade secrets and confidentiality). As a result, Plaintiffs must produce the presently redacted portions of discovery or otherwise request relief in the form of in-camera review.

## CONCLUSION

It is therefore **ORDERED** that Defendant UnitedHealthcare Insurance Company's Motion to Compel Discovery (Dkt. #24) is hereby **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED.**

**SIGNED this 5th day of January, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

24